DAVID A. and CHRISTINA GOLDSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldstein v. Commissioner
Docket No. 27247-83.
United States Tax Court
T.C. Memo 1987-47; 1987 Tax Ct. Memo LEXIS 47; 52 T.C.M. (CCH) 1481; T.C.M. (RIA) 87047; January 21, 1987. David A. and Christina Goldstein, pro se. Beatrice Pearson, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1979 and 1980 in the amounts of $1,800 and $425, respectively. After concessions, the issues for decision are: *49 (1) whether petitioners are entitled to deduct educational expenses with respect to David Goldstein's taking, and the fees of, the California real estate broker's examination; (2) whether petitioners are entitled to an investment tax credit for a leased automobile; (3) whether the receipt of a payment for Christina Goldstein's interest in her former residence pursuant to her divorce is nontaxable; (4) whether petitioners are entitled to deduct claimed business gifts in excess of the amount allowed by respondent; and (5) whether petitioners made non-cash charitable contributions to the Salvation Army in excess of the amount allowed by respondent. FINDINGS OF FACT - General Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, David A. and Christina Goldstein, husband and wife, resided in Orinda, California at the time they filed their petition herein. Petitioners individually will be referred to by first names. For convenience, our remaining findings of fact and opinion will be combined by issue. Issue 1. Broker's Examination Expenses FINDINGS OF FACT David was *50 engaged in the practice of law from 1970 until 1980. He became disinterested in practicing law and decided to "get into real estate, because [he] had been investing in real estate * * * had an interest in it, and * * * needed something to do other than practice law." To obtain a California real estate broker's license, he was required to pass a state examination; and to prepare for that examination he took a real estate course at Anthony Schools. He passed the real estate broker's examination in 1979 and made his first sale of a house in April, 1980. He then ceased being a member of the California bar. Petitioners deducted, in 1979, $335 as an educational expense for the real estate course which David took at Anthony Schools. They also deducted in 1979 the $10 fee for David's taking the real estate broker's examination. Respondent disallowed both deductions. OPINION Section 162(a)[1] allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." If expenditures are made by an individual for education *51 intended to maintain or improve skills required in his employment or other trade or business, or are expressly required by the individual's employer, then such expenditures may be deducted from income. Sec. 1.162-5(a), Income Tax Regs. However, if the expenditures for education are made in order to meet the minimum educational requirements for the qualification of an individual in his employment or other trade or business, or as part of a program which will lead to qualifying the individual in a new trade or business, then such expenditures are personal in nature and not deductible as ordinary and necessary expenses. Sec. 1.162-5(b), Income Tax Regs.
We have adopted a "commonsense approach in determining whether an educational expenditure qualifies a taxpayer for a new trade or business." Davis v. Commissioner,65 T.C. 1014, 1019 (1976); Glenn v. Commissioner,62 T.C. 270, 275 (1974). *52 If the education qualifies the taxpayer to perform significantly different tasks and activities than could be performed prior to the education, then such education qualifies the taxpayer for a new trade or business. Glenn v. Commissioner,supra;Weiszmann v. Commissioner,52 T.C. 1106 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971). Petitioners assert that the educational course undertaken by David in preparation for the real estate broker's examination did not qualify him for a new trade or business, and was not taken in order to meet the minimum educational requirements for becoming a real estate broker, but rather that it was needed to improve David's skills as an attorney. Respondent contends that the course was taken to prepare David for a new trade or business (i.e., becoming a real estate broker), and that it was not taken merely to improve David's skills as an attorney. A real estate broker is defined in Cal. Bus. & Prof. Code *53 section 10131 (West 1964) as: [A] person who, for compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others: (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property. * * * However, Cal. Bus. & Prof. Code section 10133(c) (West 1964) provides: The definitions of a real estate broker and a real estate salesman as set forth in Sections 10131 and 10132, do not include the following: * * * (c) Services rendered by an attorney at law in performing his duties as such attorney at law. * * * Cal. Bus. & Prof. Code section 10130 (West 1964) further provides that it is "unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker * * * without first obtaining a real estate license * * *." The State waives certain educational *54 requirements for attorneys who apply to take the real estate broker's examination. Cal. Bus. & Prof. Code section 10153.2(b) (West 1987). However, such waiver pertains only to the substantive educational requirements of applicants for such examination, and not to the examination itself. In Johnson v. Commissioner,77 T.C. 876 (1981), we found that the activities and tasks performed by licensed real estate brokers were so significantly different from those performed by licensed real estate agents that courses taken in preparation for the broker's examination qualified the taxpayer for a new trade or business; as such, the associated expenditures were nondeductible.[2] In Sharon v. Commissioner,66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978), an attorney licensed to practice law in New York incurred expenses with regard to a bar review course to enable him to secure a license to practice law in California. We found that the attorney was fulfilling the minimum requirements for qualification in a new trade or business, i.e., that of the practice of law in California, and that his expenses were therefore nondeductible. *55 See also Davis v. Commissioner,65 T.C. 1014 (1976). We find that Johnson and Sharon control the outcome in this case. Here, David had engaged in the practice of law for a number of years prior to and including 1979. By his own admission, he was tired of the practice of law and was seeking a career change, that of real estate brokerage. He could not, under California law, practice as a broker until he passed the broker's examination and received his broker's license, and he could not in the meantime hold himself out as a real estate broker to the public. The course and examination which David took were designed to help him embark upon his new career as a broker. After comparing the tasks and activities performed by David as an attorney and those he performed as a broker, and in view of David's avowed dissatisfaction with being an attorney, and because of the career capabilities and activities which became available to him when he obtained his broker's license, we find that the *56 preparatory course and examination were taken to qualify David for a new trade or business. The costs of that course and the fee for the examination are, therefore, personal, nondeductible expenses. Issue 2. Investment Tax Credit FINDINGS OF FACT On their 1979 return, petitioners claimed an investment tax credit in the amount of $1,584 stemming from David's leasing (for business purposes) of a 1979 Mercedes-Benz 240D automobile on November 10, 1978. The lease agreement provided that the lessee was to have no title or interest in the vehicle other than possession, and that delivery was to occur at a place designated by the lessor. [3]David left the Mercedes on the floor of the Mercedes dealership until late 1978 because he had no current need for it (he had two or three other cars), the salesman was willing to use the car as a floor show model, and David felt that it would not have been socially acceptable to drive a Mercedes in Berkeley, California at that time. [4] No election was filed by the lessor to treat the lessee (David) as having purchased the Mercedes for purposes of the investment tax credit. *57 Respondent disallowed the claimed investment tax credit because, claims respondent: (1) the automobile was first placed in service in 1978, not 1979; and (2) the lessor did not file an election, as required by the regulations, to treat the lessee (David) as having acquired the Mercedes. OPINION Section 38 provides a tax credit for investment in certain depreciable property. With respect to leased property, section 48(d)(1) provides: A person * * * who is a lessor of property may (at such time, in such manner, and subject to such conditioins as are provided by regulations prescribed by the Secretary) elect with respect to any new section 38 property * * * to treat the lessee as having acquired such property * * * The applicable regulations provide that a lessor of property may elect to treat the lessee as having purchased the property for purposes of the credit if the following conditions are satisfied: (1) The property must be new section 38 property in the hands of the lessor; (2) *58 The property would constitute new section 38 property in the hands of the lessee if the lessee had actually purchased the property; and, (3) A statement of election to treat the lessee as a purchaser has been filed by the lessor with the lessee prior to the due date of the lessee's return for the year during which possession of the property is transferred to the lessee. Sec. 1.48-4(a)(1), (f) and (g), Income Tax Regs.
Section 1.48-1(a), Income Tax Regs., defines "section 38 property" as property with respect to which: (1) depreciation is allowable to the taxpayer; (2) has a useful life of greater than three years; and (3) is tangible or other personal property. Sec. 1.48-2(a), Income Tax Regs., defines "new section 38 property" in part as section 38 property which is acquired by a taxpayer after December 31, 1961, with the original use of such property commencing with the taxpayer. We find that the automobile purchased by David in 1978 was new *59 section 38 property in the hands of First Leasing Corporation, the lessor. We also find that the automobile would constitute new section 38 property if it had actually been purchased by David, the lessee. Thus, the first two requirements of section 1.48-4(a)(1), Income Tax Regs., have been met. No evidence was presented in this case as to the filing of an election by First Leasing Corporation with respect to the automobile. David testified at trial that he did not file any such statement of election with his return, and that First Leasing did not file a statement of election with him. We accordingly find that the third requirement of section 1.48-4(a)(1), Income Tax Regs., was not met. As such, the investment tax credit is not available to petitioners with regard to the automobile. [5]
Issue 3. Divorce Disposition of Residence FINDINGS OF FACT Prior to her marriage to David, Christina was married to Orestes Varonis ("Orestes"). During their marriage, Christina and Orestes purchased a residence in Ypsilanti, Michigan (the "Ypsilanti property") *60 for $38,000; the down payment on the residence was approximately $8,000. The title for the Ypsilanti property was in the names of both Christina and Orestes, and both were liable on the mortgage securing the balance of the purchase price. The residence, along with two automobiles and other personal property, constituted the principal assets acquired during the marriage. In either June or July, 1979, Christina and Orestes were divorced. In connection with the negotiations leading to the divorce, both Christina and Orestes sought appraisals of the Ypsilanti property. During these negotiations, Orestes prepared a document entitled "Amount of Money Owned (sic) to Christina by Orestes," which placed values on their various assets and listed assets contributed by Christina during the marriage. The Ypsilanti property was given a value of $55,000. [6]
*61 Pursuant to the divorce, Christina and Orestes divided their possessions, including automobiles, personal property and income tax refunds. It was decided that Orestes would retain the Ypsilanti property and Christina would receive approximately $18,500 in cash, which in fact occurred. From the date of divorce, Christina made no further payments on the mortgage encumbering the property. [7] Petitioners filed a Form 2119, Sale or Exchange of Personal Residence, with their 1979 return, reporting a taxable gain of $10,368 as a result of the disposition of the Ypsilanti property. Petitioners contend that the receipt of the $18,500 is nontaxable and that they erroneously reported $10,368 as a taxable gain in 1979. Respondent maintains that petitioners correctly reported the gain on their 1979 return. OPINION Prior to the Tax Reform Act of 1984, Pub.L. 98-369, 98 Stat. 494, as a general *62 rule, a transfer of appreciated property from one spouse to the other in connection with a divorce resulted in the recognition of gain by the transferor spouse, measured by the difference between the value of the property transferred and its adjusted basis. United States v. Davis,370 U.S. 65 (1962). [8] Excepted from this general rule are equal divisions of co-owned property. See Serianni v. Commissioner,80 T.C. 1090, 1099 (1983), affd. 765 F.2d 1051 (11th Cir. 1985); see also McIntosh v. Commissioner,85 T.C. 31 (1985); Cook v. Commissioner,80 T.C. 512 (1983), affd. without published opinion 742 F.2d 1431 (2d Cir. 1984). In our opinion, Christina and Orestes intended to divide all marital property equally. In this regard, Orestes received the marital residence (i.e., the Ypsilanti property) and Christina received ond-half of the perceived equity in the property. David and Christina were romantically involved with one another at the time of Christina's divorce. Because David was living *63 in California, and because Christina desired to live with him, she chose to receive cash rather than the Ypsilanti property. The $18,500 approximated one-half of Christina and Orestes' equity in the Ypsilanti property, and other considerations, at the time they were divorced. Hence, in our opinion, the $18,500 received at that time is a nontaxable, equal division of co-owned property. Accordingly, petitioners erroneously reported $10,368 as taxable gain in 1979. Issue 4. Business Gifts FINDINGS OF FACT After passing the California real estate broker's examination, David began to sell real estate. He became an agent with the firm of Wallace, Underwood & Scofield in Orinda, California in 1980. Christina also became a realtor with the Wallace firm at approximately the same time. [9] In April, 1980, David sold his first house as a realtor. David's custom was to provide a gift to his real estate clients after the purchase or sale of property with which they were concerned; the gift, however, was only given after the commission was earned. In their 1980 return, petitioners claimed a deduction in the amount *64 of $880 for business gifts to clients. Respondent allowed $400 of this $880 deduction; the balance ($480) was disallowed for lack of substantiation. OPINION The petitioners bear the burden of proof with regard to this issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 274(d) provides that with respect to any expense for gifts, no deduction shall be allowed unless the taxpayer substantiates such expense by adequate records or by sufficient corroborating evidence. [10] In addition, section 274(b)(1) limits the deductible expense for business gifts to any one individual to an aggregate amount of $25 during the same taxable year. Section 1.274-5(c), Income Tax Regs., provides that each element of an expenditure must be substantiated by adequate records (such as an account book or diary) and documentary evidence (such as receipts or paid bills). *65 Petitioners did not provide adequate substantiation to support their claimed deductions for business gifts in excess of the amount determined to be deductible by respondent in his notice of deficiency. The only evidence presented by petitioners on this issue, other than their own testimony, were two documents entitled "Gifts 1980" and "Gifts Addendum." In the "Gifts 1980" document, presented to respondent at audit, petitioners purported to list the recipient of each gift, the type of gift given, and the cost of each gift. The document fails to specify the date or place of such gifts, or the business relationship between petitioners and donees. The "Gifts Addendum" document, presented at trial, is essentially the same as the prior "Gifts 1980" document, but includes a column listing the donor of said gifts to each individual as David and/or Christina. There was no evidence as to the date, place, and business relationship of each gift. These documents, in conjunction with petitioners' own statements, do not constitute the adequate records and substantiating documentation as required by the regulations. See Sanford v. Commissioner,50 T.C. 823 (1968), affd. *66 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Accordingly, since petitioners failed to carry their burden of proof, we sustain respondent's determination with respect to this issue. [11]
Issue 5. Salvation Army Contributions FINDINGS OF FACT Petitioners *67 claimed a deduction in the amount of $1,250 for non-cash charitable contributions. Of this amount, $950 was reported as having been given to the Salvation Army. The items donated to the Salvation Army consisted of personal property stored in the garage of David's house in Berkeley. David donated the property to the Salvation Army after he divorced his first wife. He had not purchased the items donated, was unaware of their cost, and was unable at trial to itemize the donated property or describe it, except for a stove, which he could describe only generally. The receipt from the Salvation Army showed the donor's declared value to be $3,000. Petitioners contend that the value of the property donated to the Salvation Army was $3,000, rather than $950 as reported on their 1980 return. Respondent allowed the $950 donation to the Salation Army as claimed on the return. OPINION Petitioners again bear the burden of proving they are entitled to a $3,000 charitable contribution deduction. Welch v. Helvering,supra; Rule 142(a). Section 170 allows an individual *68 a deduction for charitable contributions. If the charitable gift is of property other than money, the amount of the contribution is the fair market value of the property as of the date contributed, reduced as provided in section 170(e)(1). Section 1.170A-1(c)(1), Income Tax Regs. Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Section 1.170A-1(c)(2), Income Tax Regs. The fair market value of property as of any given date is a question of fact, to be resolved by considering and weighing all relevant evidence in the record. Kaplan v. Commissioner,43 T.C. 633 (1965). The only evidence presented to the Court regarding the valuation of the contributions was a copy of a Salvation Army receipt. However, the receipt did not purport to reflect the actual value of the donated property other than petitioners' valuation, nor did it list the items *69 contributed. Additionally, the receipt bore the notation that a value for contributed property could not be determined by the receiving attendant. Other than the receipt and David's self-serving testimony there is no substantiation of the $3,000 non-cash contribution now claimed by petitioners, nor, for that matter, of the $950 reported on the return. As respondent does not dispute the amount reported on the return, we find that the amount of the non-cash contribution to the Salvation Army in 1980 was $950. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. It is of note that the courses taken by the taxpayer in Johnson↩ were conducted by Anthony Schools, the same institution from which David took the preparatory course.
3. The Lease Agreement listed First Leasing Corporation as the "Lessor" of the automobile, with European Motors, Ltd. as the "Arranging Lessor-Dealer." The record is not clear as to the actual lessor of the automobile, i.e., First Leasing or European. However, our analysis is not dependent upon this distinction, as our concern centers upon David as the lessee. For convenience, we will refer to First Leasing Corporation as the lessor. ↩
4. David testified that he was moving from Berkeley to Orinda, California and he preferred to leave the car at the dealership until he was settled.↩
5. We need not decide, therefore, when the automobile was placed in service.↩
6. The document submitted at trial sets out the following calculations: ↩
1)
House Downpayment
$8,000.00
2)
Half of the house increased
value based on the appraisal
done by R.A. Coach Co. on
1/2(55,000.00-38,000.00)=
8/15/78
8,500.00
3)
Half of the house closing
fee:
1/2(713.03)=356.52
4)
Half of the total amount of
money paid towards the house
1/2(293.96)=146.98
principal value as the end of
1977
5)
Half of the amount of money
was saved at Standard Federal
1/2(505.90)=252.95
Savings on 1/1/78
6)
Half of the amount of money
was saved at F.F.C.U. on
1/2(288.85+634.79)=461.82
1/1/78
7)
Oreste's Tuition Fee paid by
Christina
421.25
8)
Half the cost of the
1969 Dodge Coronet Car
1/2 (400)=200.00
Total
$18,339.52
7. Petitioners testified at trial that they did not know whether Christina was still liable on the mortgage or whether the institution holding the mortgage had been notified of the divorce settlement.↩
8. Davis↩ was legislatively overruled for transfers occurring after July 18, 1984.
9. Christina held both Michigan and California realtor licenses.↩
10. Section 274(d) states that adequate substantiation requires the taxpayer to produce records or sufficient evidence corroborating his own statement as to: * * * (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * *↩
11. Petitioners contend that both David and Christina had separate business relationships with the gift recipients, and thus the gift limitation should be $50. Their contention is erroneous. Section 274(b)(2)(B) provides that a husband and wife shall be treated as one taxpayer for purposes of the $25 limitation, and Section 1.274-3(e)(2), Income Tax Regs., provides: Thus, in the case of gifts to an individual by a husband and wife, the spouses will be treated as one donor; and they are limited to a deduction of $25 annually for each recipient. This rule applies regardless of whether the husband and wife file a joint return or whether the husband and wife make separate gifts to an individual with respect to separate businesses.↩ * * * [Emphasis supplied.]